IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICK CAMUGLIA, d/b/a
PAISANO'S RESTAURANT,

       Plaintiff,

vs.                                                                                                        No. CIV 04-0048 JB/LFG

THE CITY OF ALBUQUERQUE and
THE ALBUQUERQUE ENVIRONMENTAL
HEALTH DEPARTMENT and GUY
WORTHINGTON, in his individual capacity
and as an employee of THE CITY of
ALBUQUERQUE,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants Guy Worthington and Jay Cousins' Motion for Summary Judgment and Memorandum of Law in Support, filed August 20, 2004 (Doc. 55).[1]  The Court held a hearing on this motion on December 21, 2004.[2]  The primary issues are: (i) whether Worthington afforded Camuglia an adequate level of process; and (ii) whether Worthington's actions violated Camuglia's substantive due process rights.  Because the Court concludes that Worthington gave Camuglia adequate process and did not violate his substantive due process rights, the Court will grant the motion for summary judgment and dismiss the claims against

---

[1] On December 23, 2004, Camuglia filed a Stipulation to Dismiss All Claims Against Defendant Cousins With Prejudice (Doc. 71).  The Court will, therefore, address only Worthington's motion for summary judgment.

[2] The Court previously entered an Order granting the Defendants' motion for summary judgment.  <u>See</u> Order, filed March 31, 2005 (Doc. 73).  This opinion is intended to explain more fully the Court's reasoning for its previous Order.

Worthington.

## **FACTUAL BACKGROUND**

While the parties dispute some facts, there are many facts undisputed. And there is no dispute about a material fact.

Plaintiff Rick Camuglia is an owner and operator of Paisano's, a restaurant located at 1935 Eubank NE, Albuquerque, New Mexico. Defendant Albuquerque Environmental Health Department ("EHD") is a department of the Defendant City of Albuquerque, and has as one of its responsibilities the monitoring and inspection of restaurants for health and safety violations. At all times relevant to this action, Worthington was an employee of the City of Albuquerque within EHD. See Affidavit of Guy Worthington ¶ 1, at 1 (executed August 19, 2004)(hereinafter "Worthington Aff."). Worthington's primary responsibility within EHD was to inspect restaurants for threats to customer safety. See id.

On February 19, 2003, Worthington inspected Paisano's premises. See id. ¶ 2, at 1. Worthington found several violations of the Food and Beverage Ordinance, including roaches. See id. Worthington instructed Camuglia to promptly address the violations. See id. ¶ 3, at 1. Camuglia indicated that he would remedy the violations and asked Worthington to return the next day. See id.

The following day, Worthington returned to Paisano's and observed Glen Waters, an exterminator for AACTION using a spray fogger to emit pesticide in the restaurant. See id. ¶ 4, at 1. Worthington concluded that the chemicals were not being applied in a proper manner. See id. ¶¶ 4, 5, at 2-3. See id. Worthington contacted his supervisor and together they decided to temporarily suspend Paisano's permit. See id. ¶ 6, at 2. Later that day, Worthington returned to his office and prepared an inspection summary. See id. In accordance with EHD practice, he sent by facsimile

transmission a copy of the inspection summary to the media. See id. ¶ 7, at 2. Subsequently, members of the news media arrived at Paisano's to report on the matter. See First Amended Complaint for Deprivation of Property Without Due Process ¶ 12, at 2, filed March 25, 2004 (Doc. 24)(hereinafter "First Amended Complaint").

On February 21, 2003, Steve Baca, an inspector for the New Mexico Department of Agriculture, conducted an investigation of Paisano's. See Incident No. 03-11, Report Nos. 003030, 003006, February 21, 2003. Baca took swab samples from the interior of the restaurant. See id.; See Deposition of Steve Baca at 21:5 - 22:25 (executed July 16, 2004)(hereinafter "Baca Depo."). Two of the three samples contained the pesticide used in the restaurant. See Baca Depo. 24:14 - 25:7.

## PROCEDURAL BACKGROUND

On December 17, 2003, Camuglia filed in state court a Complaint for Deprivation of Property Without Due Process. See Petition for Removal, filed January 16, 2004 (Doc. 1). Camuglia filed in federal court a First Amended Complaint for Deprivation of Property Without Due Process, naming the City of Albuquerque, EHD, Worthington, and John Roe as defendants. See First Amended Complaint, at 1. The Complaint also contained state due process and libel and slander claims. Worthington and John Roes were named in their individual capacities and as employees of the City of Albuquerque. Camuglia later amended his complaint, replacing Roe with Defendant Jay Cousins. See Second Amended Complaint for Deprivation of Property Without Due Process, April 29, 2004 (Doc. 31). Worthington and Cousins, pursuant to rule 56 of the Federal Rules of civil Procedure, move the Court for summary judgment on all claims. At the hearing on the motion for summary judgment, Camuglia represented that he was dismissing the libel and slander claim. See

Transcript of Hearing, at 4:6-9 (December 21, 2004)(hereinafter "Transcript").[3]  On December 23, 2004, Camuglia filed a Stipulation to Dismiss All Claims Against Defendant Cousins With Prejudice (Doc. 71).

## SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Once a defendant raises the qualified immunity defense, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988).  If the plaintiff meets this two-part burden, the defendant "assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute." Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

In ruling on a summary judgment motion, the court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  See Allen v. Muskogee, Oklahoma, 119 F.3d 837, 839-40 (10th Cir. 1997).  The court's role on a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

242, 249 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995)(quoting Matsushuta Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986))(internal quotations omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48. "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)).  "If the evidence is merely colorable, . . . or is not significantly probative," summary judgment is appropriate. See Anderson v. Liberty Lobby, Inc. 477 U.S. at 249-50 (internal citations omitted).

## RULE 56(f)

Rule 56(f) of the Federal Rules of Civil Procedure provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). "The general principle of Rule 56(f) is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" Price v. Western Resources, Inc., 232 F.3d 779, 783 (10th Cir.

2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 250 n. 5). The Supreme Court has instructed district courts to be mindful that qualified immunity protects government officials from discovery. See Harlow v. Fitzgerald, 457 U.S. at 817-18 ("[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery . . . . Until this threshold immunity question is resolved, discovery should not be allowed."). "Rule 56(f) is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity." Lewis v. City of Ft. Collins, 903 F.2d 752, 759 (10th Cir. 1990). In response to a summary judgment motion based on qualified immunity, a plaintiff's rule 56(f) affidavit must demonstrate "'how discovery will enable them to rebut a defendant's showing of objective reasonableness' or, stated alternatively, demonstrate a 'connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion.'" Id. at 758 (quoting Jones v. City and County of Denver, Colo., 854 F.2d 1206, 1211 (10th Cir. 1988). "[I]t is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." Id.

## DUE PROCESS

### 1. Procedural Due Process.

The United States Court of Appeals for the Tenth Circuit employs a two-step test when evaluating whether a citizen's right to procedural due process has been violated: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)(quoting Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998)).

Typically, a property owner will be entitled to a pre-deprivation hearing; however, alternative procedures may be sufficient when "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, [is] coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking." Hudson v. Palmer, 468 U.S. 517, 531-32 (1984). The amount of process deemed sufficient will vary with the facts of a particular case. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972). In weighing whether the process afforded was sufficient, courts apply the balancing test promulgated in Mathews v. Eldridge, 424 U.S. 319 (1976), and "consider the private interest involved, the risk of erroneous deprivation resulting from the procedures used, the probable value of additional procedural safeguards, and the government's interest in efficient procedures." Clark v. City of Draper, 168 F.3d at 1189 (citing Matthews v. Eldridge, 424 U.S. at 335).

### 2. **Substantive Due Process.**

Assuming a property interest is established, "[s]ubstantive due process requires only that termination of a protected interest not be arbitrary, capricious, or without a rational basis." e.sprire Communications v. Baca, 269 F. Supp. 2d 1310, 1325 (D.N.M. 2003)(citing Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1215 (10th Cir. 1998)). To reach this level, the government's action must be intentional, rather than merely negligent. See Collins v. City of Harker Heights, 503 U.S. 115, 127 n.10 (1992). "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)(quoting Collins v. City of Harker Heights, 503 U.S. at 129). "[T]he Due Process Clause is not a guarantee against incorrect or ill-advised [municipal] decisions . . . [and any] violation must be more than an ordinary tort to be actionable under [§] 1983." Uhlrig v. Harder, 64 F.3d 567, 573

(10th Cir. 1995)(internal quotations omitted). The government's action must be of the sort that would "shock the conscience of federal judges." Collins v. City of Harker Heights, 503 U.S. at 126. See Radecki v. Barela, 146 F.3d 1227, 1229 (10th Cir. 1998)( "[I]n order to prevail on a substantive due process claim such as the one asserted here, the plaintiff must demonstrate that the defendant acted in a manner that shocks the conscience.").

### 3. Due Process and the Protection of the Public's Health and Safety.

In North Am. Cold Storage v. City of Chicago, 211 U.S. 306 (1908), the Supreme Court held that a statute providing for seizure and destruction of potentially contaminated food without a hearing did not violate the plaintiff's due process rights. See id. at 315. The Court concluded that no pre-deprivation hearing was necessary because the City had a duty to protect the public's health and safety. See id.

The Tenth Circuit reached a similar result in Clark v. City of Draper, 168 F.3d 1185 (10th Cir. 1999). In that case, plaintiff's foxes bit a small child. See id. at 1186-7. The city suspected the foxes had rabies. See id. at 1187. Pursuant to a state statute, the city impounded the foxes without conducting a pre-deprivation hearing. See id. The city conducted a post-deprivation hearing and then destroyed the foxes to conduct rabies tests. See id. The Tenth Circuit explained that, when the state must act quickly to protect public health or safety, a pre-deprivation hearing may not be required. See id. at 1189. The Tenth Circuit concluded that "Draper City's process was sufficient, particularly in light of the government's strong interest in public health and in the speedy resolution of rabies tests on the foxes." See id. at 1189-90.

In Contreras v. City of Chicago, 920 F.Supp. 1370, 1393 (N.D. Ill. 1996), the District Court for the Northern District of Illinois considered whether a restaurant owner's due process rights were

-8-

not violated when the City of Chicago temporarily suspended his license without a pre-deprivation hearing.  Relying on North Am. Cold Storage v. City of Chicago, the district court explained:

> [T]here can be little genuine dispute that where matters of public health or safety are involved, the State may act first and ask questions later without offending the Due Process Clause. Not even an informal hearing . . . must precede a deprivation undertaken to protect the public safety. As the Court explained in Parratt v. Taylor, 451 U.S. 527 (1980), "necessity of quick action by the State . . . when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process."

Id. at 1393 (citations and quotations omitted). The district court concluded: "The temporary suspension of Clark's license by the DCS sanitarians plainly falls within the public health or safety class of due process cases; therefore, we find that the Due Process Clause requires no more than adequate postdeprivation process." Id. at 1394.

## ARTICLE II, § 18 OF THE NEW MEXICO CONSTITUTION

Article II, §18 of the New Mexico Constitution provides: "No person shall be deprived of life, liberty or property without due process of law."  The New Mexico Supreme Court has stated that when there is no New Mexico precedent interpreting a provision of the New Mexico Constitution distinctly from its federal counterpart, the party desiring such a distinction must assert to the trial court that it should be interpreted more expansively and provide reasons therefore.  See State v. Gomez, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 784, 932 P.2d 1, 8. See also State v. Gonzalez, 110 N.M. 218, 220, 794 P.2d 361, 363 (Ct. App. 1990)(noting that, in the criminal context, determination whether a defendant's rights to due process have been violated under the federal and state constitutions requires the same test).

## ALBUQUERQUE CODE OF ORDINANCES

Section 9-6-1-13 sets out the City of Albuquerque's procedure for suspending restaurant permits. It provides:

> Notwithstanding the other provisions of §§ 9-6-1-1 et seq., whenever the enforcement authority finds an imminent health hazard or other conditions in the operation of a food-service or food processing establishment which, in his judgment, constitute a substantial hazard to the public health, he may without any prior warning, notice, or hearing, issue a written notice to the permit holder or operator citing such condition, specifying the corrective action to be taken, and specifying the time period within which action shall be taken; and, if deemed necessary, such order shall state that the permit is immediately suspended and all food-service or food processing operations are to be immediately discontinued. Any person to whom such an order is issued shall comply immediately therewith. An opportunity for a hearing will be provided if a written request for a hearing is filed with the enforcement authority by the permit holder within five working days. The hearing shall be held within five working days after the date of the filing of the written request for the hearing.

Albuquerque Code of Ordinances, § 9-6-1-13(C).

## ANALYSIS

### I. THE ISSUES THAT THE MOTION FOR SUMMARY JUDGMENT RAISES ARE RIPE FOR DECISION.

Camuglia filed a rule 56(f) affidavit with his Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendants Guy Worthington and Jay Cousins' Motion for Summary Judgment, filed September 3, 2004. Camuglia argues that he has not been given an adequate opportunity to conduct discovery. He maintains that he has yet to depose Worthington, primarily because Worthington has yet to provide Camuglia with documents.

It is insufficient, however, for a party opposing a summary judgment motion based on qualified immunity to "assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." Lewis v. City of Ft. Collins, 903 F.2d at 758 (internal quotation marks and citation omitted). A plaintiff's rule 56(f)

-10-

affidavit must demonstrate "'how discovery will enable them to rebut a defendant's showing of objective reasonableness' or, stated alternatively, demonstrate a 'connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion.'" <u>Lewis v. City of Ft. Collins</u>, 903 F.2d at 758 (quoting <u>Jones v. City and County of Denver, Colo.</u>, 854 F.2d at 1211). Camuglia has not adequately demonstrated what additional discovery would show in this case. He has not shown that a deposition of Worthington would make a difference. Moreover, Camuglia has had ample opportunity to do discovery. Worthington's motion for summary judgment is therefore ripe for decision.

## II.  **THERE ARE NO GENUINE ISSUES OF MATERIAL FACT.**

Although Camuglia disputes many of the facts of this case, none of these factual disputes are material. Camuglia does not contend that the Albuquerque ordinance violates the Constitution. Camuglia thus does not dispute that, "whenever the enforcement authority finds an imminent health hazard . . . which in his judgment, . . . constitutes a substantial hazard to the public health," the City can suspend the restaurant's permit without a hearing. Albuquerque Code of Ordinances, § 9-6-1-13(C). Camuglia has presented no evidence that disputes that Worthington, "in his judgment," concluded there was a "substantial hazard to the public health" and decided suspending Camuglia's license was in the interest of public safety.

In his affidavit, Worthington described what he observed at Paisano's on February 20, 2003. He stated:

> When I arrived a Paisano's on the morning of February 20, 2003, I observed an exterminator from AAction Pest Control using a spray fogger to emit pesticide in the entire facility. Although the technician was wearing protective gear, the back door of the facility was wide open and people were freely entering and exiting the facility without regard for the presence of chemicals. No notice was posted warning of the

>on-going fumigation. No effort had been made to cover food, food preparation areas, tables, or even the salt and pepper shakers. Out of concern for public safety, I request that all employees exit the restaurant and asked to see the warning label for the pesticide being used.

Worthington Aff ¶ 4, at 1-2.

Camuglia disputes some of these facts based on Waters' deposition. Waters, in his deposition, testified that when he first arrived at Paisanos, he had to wait to be let into the building because the restaurant was locked. See Waters Depo. at 57:13-17. He stated that he walked into the restaurant and assumed no one was in the building because it was locked when he arrived. See id. He testified that he always closed the door and turned off the ventilation when he was spraying. See id. 22:9-17. He testified that while he was using the spray fogger, no one entered the restaurant except Guy Worthington. See id. 24:4-7. Waters also testified that he did not post any signs indicating to people outside the restaurant that he was spraying a pesticide. See id. 56:19-22.

Waters' testimony creates an issue of fact whether there were people inside the building during the fumigation. This issue of fact, may relate to whether there was a "substantial hazard to the public," but Camuglia has not presented evidence that disputes that Worthington, "in his judgment," concluded there was a substantial hazard and decided to suspend Camuglia's license in the interest of public safety.

Similarly, Camuglia also disputes whether there was uncovered food exposed to the pesticide. Waters testified that he did not notice any exposed food while he was applying the product. See id. 44:1-3. This issue of fact, however, does not create a dispute whether Worthington "in his judgment" concluded the situation warranted immediate suspension of Camuglia's license. Thus, it is not a material issue of fact.

The Albuquerque Ordinance authorized Worthington to use his judgment to protect the safety and health of the public. Camuglia raises issues of fact regarding the soundness of Worthington's judgment, but he offers no evidence that suggests that Worthington did not use his judgment or that Worthington's did not believe that he was acting in the interest of public health and safety.

If Camuglia had introduced evidence that Worthington closed the restaurant because of reasons other than the exercise of his judgment, there might be some triable issue. But Camuglia introduces no such evidence. Instead, Camuglia contests only whether there was actually hazard. Given that Camuglia does not dispute the constitutionality of the ordinance, whether Worthington was right in the exercise of his judgment is not a material issue.

### III. WORTHINGTON IS ENTITLED TO SUMMARY JUDGMENT ON CAMUGLIA'S FOURTEENTH AMENDMENT CLAIMS.

Worthington moves the Court for summary judgment because he is qualifiedly immune from suit. To survive Worthington's motion, Camuglia must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 612, 646 (10th Cir. 1988). Because the Court concludes that Worthington did not violate clearly established law, it will grant Worthington's motion for summary judgment on Camuglia's Fourteenth Amendment Claims.

#### A. WORTHINGTON'S CONDUCT DID NOT VIOLATE THE LAW.

Camuglia does not contend that § 9-6-1-13 is unconstitutional. Rather, Camuglia argues that Worthington misapplied the ordinance. Mere misapplication or mistake of a city ordinance does not rise to the level of a federal constitutional violation.

### 1. Camuglia Was Afforded an Appropriate Level of Procedural Due Process.

Camuglia asserts Worthington violated his procedural due process when he closed Paisano's and notified the media without providing him with any level of process. Camuglia does not challenge the constitutionality of § 9-6-1-13 of the Ordinance, but asserts that Worthington's application of § 9-6-1-13 violated his right to procedural due process. Worthington argues that he did not violate Camuglia's right to procedural due process because, under the circumstances, Camuglia was not entitled to any process.

The Supreme Court of the United States has explained that the amount of process due varies with the facts of a particular case. See Morrissey v. Brewer, 408 U.S. at 481. Although a property owner is generally entitled to a pre-deprivation hearing, alternative procedures may be sufficient when "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, [is] coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking." Hudson v. Palmer, 468 U.S. at 531-32.

In accordance with this rule, § 9-6-1-13(C) authorizes restaurant inspectors to use their judgment in assessing whether the facts and circumstances they encounter require immediate action. Section 9-6-1-13 authorizes inspectors to close a restaurant, without a hearing, upon finding that "an imminent health hazard or other conditions in the operation of a food-service or food processing establishment which, in his judgment, constitute a substantial hazard to the public health." Albuquerque Code of Ordinances, § 9-6-1-13(C). Camuglia concedes that the procedure set forth in § 9-6-1-13(C) is sufficient. See Transcript at 22:12-15. He does not argue that this ordinance is

unconstitutional, but rather that the manner in which it was applied violated due process. See id.

Camuglia disputes whether in fact there was a "substantial hazard" to the public. He does not, however, dispute that Worthington, "in his judgment," concluded there was a substantial hazard and decided suspending Camuglia's license was in the interest of public safety. Section 9-6-1-13 authorized Worthington to use his discretion. A mere misapplication or violation of a city ordinance does not become a violation of federal due process rights. Moreover, there is insufficient evidence that Worthington acted so unreasonably in exercising his judgment, that he violated the federal constitution. On the undisputed material facts before the Court, a reasonable inspector could find that the situation presented a substantial hazard. Any dispute in the facts may go to the degree of the hazard, but the undisputed material facts do not show a constitutional violation. Under the circumstances, Worthington afforded Camuglia the due process to which he was entitled under the City ordinance. Again, Camuglia does not argue that the ordinance is constitutionally deficient. The restaurant opened the next day. Camuglia receive notice; under the ordinance, he had an opportunity for a hearing.

**2.    Worthington Did Not Violate Camuglia's Substantive Due Process Rights.**

To establish that Worthington violated Camuglia's substantive due process rights, Camuglia must show that Worthington's actions were "arbitrary, capricious, or without a rational basis," Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d at 1215, and that he "acted in a manner that shocks the conscience," Uhlrig v. Harder, 64 F.3d at 573. See Collins v. City of Harker Heights, 503 U.S. at 126; Radecki v. Barela, 146 F.3d at 1229. "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. at 846 (quoting Collins v. City of Harker Heights, 503 U.S. at 129).

The facts in this case do not shock the conscience. Viewed in the light most favorable to Camuglia, the record before the Court is that Worthington observed Waters improperly spraying a pesticide inside Paisano's. Based on this observation, Worthington and his supervisor, out of concern for public safety, decided to suspend Paisano's permit. Although Camuglia argues that Worthington was not using sound discretion, "the Due Process Clause 'is not a guarantee against incorrect or ill-advised [government] decisions.'" Uhlrig v. Harder, 64 F.3d at 573 (citing Collins v. City of Harker Heights Tex., 503 U.S. at 129). Even if Worthington made a poor decision, Camuglia presents no evidence that Worthington's actions were arbitrary, capricious, or without a rational basis. The evidence before the Court indicates that Worthington's actions were in accord with his responsibility for protecting public health. The Court cannot characterize Worthington's actions as "the most egregious official conduct." County of Sacramento v. Lewis, 523 U.S. at 846 (quoting Collins v. City of Harker Heights, 503 U.S. at 129). Nor can the Court conclude that Worthington's actions shock the conscience. Thus, Camuglia's allegations do not meet the high standard that the Supreme Court set for substantive due process claims in County of Sacramento v. Lewis. Camuglia fails to establish that Worthington violated his substantive due process rights.

**B.     THE LAW WAS NOT CLEARLY ESTABLISHED.**

Even if the Court assumes that Worthington's actions violated Camuglia's constitutional rights, Worthington is nonetheless entitled to qualified immunity. The court and the parties here diligently searched for cases involving food inspectors, and the law is not clearly established what the law is for food inspectors who close down a restaurant immediately because they believe there is an imminent hazard. There are no Supreme Court or Tenth Circuit cases that would have reasonably put Worthington on notice that what he did would violate the United States Constitution. A

reasonable inspector wold not have known that suspending a license after observing the improper application of a pesticide in a restaurant and notifying the media, was a constitutional violation. It is the plaintiff's burden to establish that a law is clearly established. Pueblo Neighborhood Health Ctr., Inc. v. Losavio, 847 F.2d at 646 ("[P]laintiff carries the burden of convincing the court that the law was clearly established."). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

Camuglia has not identified any cases indicating that Camuglia's actions were contrary to law. Worthington, however, points to a number of cases indicating that his actions were in accord with the law. See North Am. Cold Storage v. City of Chicago, 211 U.S. at 315 (holding plaintiff's due process rights not violated where City seized and destroyed potentially contaminated food without pre-seizure hearing because possibility of wrongful deprivation outweighed possibility of public health emergency); Clark v. City of Draper, 168 F.3d at 1189-90 (holding procedural due process rights not violated when city impounded foxes owned by plaintiff that had bitten a small child and were suspected of being rabid without conducting a pre-deprivation hearing); Contreras v. City of Chicago, 920 F.Supp. at 1393 (holding restaurant owner's due process rights not violated where license was temporarily suspended without a pre-deprivation hearing because the suspension fell within the public health or safety class of due process cases).

Camuglia also has not provided authority that notifying the media of his actions violated due process. Police and other government officials often notify the media of governmental actions. To find such an action could violate constitutional rights -- even when the underlying action is mistaken

-- could easily chill open government.

Camuglia has not provided authority indicating that the law was clearly established. The Court, therefore, concludes that the law was not clearly established.

## IV. **WORTHINGTON DID NOT VIOLATE THE NEW MEXICO CONSTITUTION.**

Both parties acknowledge that there is no authority indicating that the Court should interpret the due process elements of the New Mexico Constitution differently than the due process elements of the Federal Constitution, and therefore, both parties re-affirm their federal due process arguments. See Defendants Guy Worthington and Jay Cousins' Motion for Summary Judgment and Memorandum of Law in Support, at 12; Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant Guy Worthington and Jay Cousin's Motion for Summary Judgment, at 14. The Court, having concluded that Worthington is entitled to summary judgment on the federal constitutional claims, concludes that he is entitled to summary judgment on the state constitutional claims as well. The Court will grant summary judgment on the Camuglia's state constitutional claims.

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David M. Berlin
Duhigg, Cronin, Spring, Berlin & Bencoe, P.A.
Albuquerque, New Mexico

   *Attorney for the Plaintiff*

Robert M. White
  City Attorney

   City of Albuquerque
Peter S. Auh
  Assistant City Attorney
Albuquerque, New Mexico

     *Attorneys for the Defendants*